**Mary Frazier TAYLOR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2976.**

Supreme Court of Alaska.

Sept. 21, 1979.

---

Jane Kauvar, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Susan M. Delbert, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BOOCHEVER, Justice.

Taylor appeals her conviction for two counts of selling heroin to a minor, a violation of AS 17.10.010.[1] We affirm.

James Blair and Phil Geiger, working in connection with the Areawide Narcotics

---

1. . Penalties for violation of AS 17.10.010 are specified in AS 17.10.200. AS 17.10.200(c) provides for enhanced penalties for persons convicted of illegally selling, giving or supplying narcotic drugs to a person under 21 years of age.

Team in Fairbanks, made two "controlled buys" of heroin from George Redhead, age 17.[2] Blair and Geiger were not police officers but were working for the state in return for leniency on drug charges against Geiger and Geiger's girlfriend, who was Blair's sister.[3] Blair and Geiger took Redhead to a house, Redhead went in alone and came back with heroin. Redhead was arrested and told the police that he had bought the heroin from persons he later identified as Mary Taylor and her co-defendant, Thomas Taylor.[4] Redhead agreed to testify against them in return for a five-year suspended sentence.

■ In her first point on appeal, Taylor argues that the trial court erred in not allowing defense counsel to inquire into an incident which Taylor contends was probative of Redhead's alleged bias.[5] The trial court did not err by preventing questioning of Redhead about a year and a half old charge, which apparently the state had long since decided not to prosecute. Defense counsel suggested, and the trial court agreed, that instead of questioning specifically about the 1974 charge, counsel should simply ask Redhead whether, after earlier (1971) charges, he had been in further trouble with the law. This procedure was followed at trial. The details of the 1974

incident were irrelevant to bias. The trial court permitted full inquiry into Redhead's agreement with the state, see R.L.R. v. State, 487 P.2d 27, 44 (Alaska 1971), and Redhead quite explicitly said that he was testifying to avoid spending time in an institution.

■ The backdrop for analyzing Taylor's next two claims of error, which relate to Blair and Geiger, is the relative unimportance of Blair's and Geiger's credibility since their testimony implicating Taylor was corroborated by police officers' monitoring the buys or by Redhead. The trial court did not err by preventing questioning of Geiger about a written statement made to Danny Keyes.[6] Given the unusual circumstances of the statement,[7] the trial court had ample grounds to conclude that whatever relevancy the statement had for evaluating whether Geiger was telling the truth was outweighed by the likelihood that it would confuse the issues, mislead the jury and consume an undue amount of time. See Burgess Construction Co. v. Hancock, 514 P.2d 236, 237 (Alaska 1973); Alaska R.Evid. § 403 (effective August 1, 1979); McCormick on Evidence § 185, at 439–40 (2d ed. 1972).

2.  The police arranged and supervised the buys. Blair and Geiger were stripsearched before and after meeting Redhead. Their car was also searched. The buy was made with currency whose serial numbers were recorded. Blair, during the first buy, and Geiger, during the second one, wore recording devices through which the police monitored the conversations in the car, and the police vehicle tailed the car both times. After leaving Redhead, Blair and Geiger went back to police headquarters and turned over the substance they had gotten. Each time, it was in toy balloons which Blair or Geiger initialed. The substance was immediately field tested, later lab tested, and found to be heroin.

3.  Blair and Geiger also received compensation and relocation expenses.

4.  Thomas Taylor's appeal was dismissed at his request pursuant to a plea agreement with the state. See Alaska R.App. P. 32(b).

5.  The incident involved an altercation between Redhead and his stepfather over wages Redhead claimed were owed him. During the con-

frontation, Redhead brandished a gun. Although Redhead was charged with assault with a deadly weapon in juvenile court, the record does not reveal that a formal adjudication was rendered.

6.  A fortiori, the trial court did not err by excluding the statement itself.

7.  Geiger signed and gave this statement to Keyes:

I hereby state my business dealings with Danny Keyes were all on a legal basis. Nothing we have transacted has been illegal or against the law. The reason for my statement against the above [at a grand jury proceeding] is because all transactions between Danny Keyes and myself were transacted after I was threatened by the Alaska State Troopers with physical violence.

The prosecutor's uncontradicted explanation of the statement was that Geiger signed the statement, with express permission of the police, to preserve his undercover status.

■ The trial court did not err by excluding evidence [8] that Blair and Geiger had skimmed heroin on other buys and then tried to cover up the evidence of their skimming.[9] The evidence did not undermine the chain of custody in this case [10] and would, at best, have proven that Taylor sold Redhead *more* heroin than the police eventually received from Blair and Geiger. The main effect of the evidence would have been impeachment of Blair's and Geiger's credibility by "evidence of particular wrongful acts," in contravention of Criminal Rule 26(a).[11] In fact, even assuming the evidence was marginally relevant to the chain of custody in this case, the probative worth of the evidence was again outweighed by the likelihood that it would prejudice the jury, confuse the issues and consume an undue amount of time.[12]

■ The record clearly belies Taylor's assertion that the trial court's rulings left the jury with a misimpression about Blair's and Geiger's reasons for testifying. The trial court permitted full inquiry into Blair's and Geiger's cooperation with the police. The jury knew that their cooperation was not based on turning over "a new leaf" but was due to the threat of criminal prosecution.

As part of Redhead's testimony about his relationship with Blair and Geiger, the jury heard that Geiger and Blair had continued using and even selling heroin after Geiger's arrest for drug offenses. Thus, even if any of the trial court's rulings excluding evidence relating to Blair and Geiger were error, it was harmless,[13] since their testimony was corroborated and the jury was apprised of possible sources of bias of their testimony.

■ The trial court did not err in refusing to impose sanctions, including dismissal of the case, for the prosecutor's alleged failure to reveal information during discovery.[14] The court's conclusion that sanctions were inappropriate is supported by the defendant's discovery of the evidence before trial, the relatively minor importance of the information in this case, and the record's lack of clarity that the prosecutor wilfully withheld the information. As we stated in *Scott v. State*, 519 P.2d 774, 777 (Alaska 1974): "[B]road latitude must be accorded to a trial court in the conduct and management of pretrial procedures."

■ Taylor incorporated by reference the relevant appeal arguments of her co-de-

---

8. The evidence consisted of testimony by Walter Padgett that Blair and Geiger had told him that they had skimmed heroin on other buys and had used heroin while working for the police. We note that, in a previous case where defense counsel offered to introduce similar testimony by Padgett of Blair's and Geiger's skimming for the purpose of impeachment and as evidence of bad moral character, we upheld the trial court's exclusion of the evidence. *See Jones v. State*, 576 P.2d 997, 1000–01 (Alaska 1978).

9. Taylor argues that she should have been allowed to question Blair and Geiger whether they had done those things even if she could not introduce extrinsic evidence to contradict their answers. First, she never raised this issue at trial. Second, whether Blair and Geiger had done those things does not seem relevant to any issues involved in Frazier's trial. Third, even assuming this question comes within an area about which a party may ask questions but not introduce extrinsic evidence to contradict the answers, *see* 3 Wigmore on Evidence § 1023 (Chadbourn rev.ed. 1970), the error would be harmless in light of the relative unimportance of Blair's and Geiger's testimony

which, as we note above, was corroborated in all important particulars by other witnesses.

10. *See* note 2 *supra.*

11. Criminal Rule 26(a) states that the admissibility of evidence in criminal trials shall be governed by Civil Rule 43 when no criminal rule applies. Civil Rule 43(g)(11)[b] provides that a witness "may not be impeached by evidence of particular wrongful acts." The new rules of evidence, effective August 1, 1979, also exclude evidence of bad acts to impeach a witness' credibility, with certain exceptions not relevant to the present case. Alaska R.Evid. 608(b).

12. *See* Alaska R.Evid. 608(c).

13. Alaska R.Crim. P. 47(a).

14. The information was the evidence about Blair's and Geiger's skimming heroin from other buys set up by the police and then their attempts, allegedly with police cooperation, to cover up the evidence.

fendant. Thomas Taylor argues that the trial court improperly limited questioning of Blair and Geiger about their prior sales to Redhead. Taylor's brief, however, cites nowhere in the record where the trial court imposed this limitation.[15] Moreover, the trial court permitted extensive questioning of Redhead about Blair's and Geiger's prior sales to him. We find no error.

■ Thomas Taylor argues that it was plain error for the trial court not to give an accomplice instruction because of Redhead's testimony. Again, we find no error. Taylor, citing *Howard v. State*, 496 P.2d 657, 660 (Alaska 1972),[16] argues that since he and Redhead were both charged with selling heroin, he and Redhead were accomplices. One flaw with this logic is that there were two different sales: Taylor sold to Redhead, and in that transaction, Taylor was the seller, Redhead the buyer. The fact that Redhead subsequently sold to Blair and Geiger does not make Redhead an accomplice with Taylor in the prior sale.

Taylor argues that the accomplice instruction was necessary to "emphasize the very suspect motivations of this class of witnesses [namely, accomplices]." *Gordon v. State*, 533 P.2d 25, 29 (Alaska 1975). It is true that Redhead belonged to a suspect class of witnesses—informants testifying because of a promise of leniency—and the trial court gave a perfectly adequate instruction to that effect.

AFFIRMED.

RABINOWITZ, C. J., not participating.

---

15. Thomas Taylor quotes from defense counsel's discussion with the trial court about why inquiry into Blair's and Geiger's prior sales to Redhead was necessary. This anteroom discussion occurred during cross-examination of Redhead. It ended with the court allowing this line of questioning of Redhead, and defense counsel extensively questioned Redhead about Blair's and Geiger's prior sales to him. Taylor's brief then refers to an instance where the trial court excluded inquiry into other transac-

tions. The trial court there was ruling on questioning Blair and Geiger about whether they had skimmed in other controlled buy situations. This limitation had nothing to do with Blair's and Geiger's prior sales to Redhead.

16. Taylor relies specifically on the following language found in *Howard*: "A purchaser of illegally sold narcotics cannot, then, be an accomplice to the sale." 496 P.2d at 660.