Randy Lee OSBORNE, Appellant,

v.

STATE of Alaska, Appellee.

File No. 3478.

Supreme Court of Alaska.

Feb. 13, 1981.

Max F. Gruenberg, Jr., Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and HANSON, Superior Court Judge.*

## OPINION

CONNOR, Justice.

Randy Lee Osborne pled guilty on March 25, 1977, to armed robbery and murder in the first degree for his role in the robbery and homicide of John Ieppert. Following acceptance of his guilty plea to the Ieppert homicide, Osborne was tried by jury for the homicide of John Dempe, and was convicted for attempted robbery and first degree murder. For convenience we will refer to these as the "Ieppert case" and the "Dempe case." Osborne received two consecutive life sentences for the murder convictions, plus concurrent sentences on the armed robbery and attempted robbery charges.

Osborne now challenges his dual murder convictions on several grounds. He contends (1) that the trial court, in accepting the plea in the Ieppert case, erred by failing to adequately determine that Osborne possessed the specific intent to kill required for a first degree murder conviction; (2) that an order of the court in the Ieppert case, compelling the adverse testimony of his newly-wedded wife against him, was in error and prejudiced the outcome of both the Ieppert and Dempe cases; (3) that the court in the Ieppert case erred in failing to require his presence at a deposition concerning a contempt charge brought against one of his attorneys; and (4) that the court in the Dempe case erred in limiting Osborne's examination of a witness testifying on behalf of Osborne.

On September 7, 1976, the Fairbanks police discovered the body of John Dempe under the Wendell Street Bridge, his skull having been crushed the previous night by a cement block found lying nearby. On November 29, 1976, the Fairbanks police found the body of John Ieppert in his car, parked on a residential street of the city. Ieppert apparently had been robbed and shot to death the previous afternoon. The police did not develop leads on either killing until December 15, 1976, when Linda Kious signed a complaint against Randy Osborne, with whom she was living. She complained that Osborne had committed criminal mischief, a municipal misdemeanor, as a result of a domestic argument between them. During her interview with the police, Ms. Kious stated that Osborne had informed her of his participation in both the Dempe and Ieppert killings. Later that day Osborne was questioned and then arrested for both homicides.

On March 14, 1977, Randy Osborne and Linda Kious were married in a courtroom in Fairbanks. The brief ceremony, organized by Osborne's attorney, occurred fifteen minutes before a scheduled hearing on a motion brought by the state to enjoin the issuance of a marriage license to the couple, or to otherwise arrange for obtaining Linda Kious' testimony at Osborne's pending trials, despite the marriage. The jury for Osborne's first trial, for the Ieppert homicide, was to be impaneled only one week later, on March 22, 1977.

The coincidence in timing between Osborne's upcoming trials and the wedding served as the principal basis for the court's decision, reached on March 18, 1977, to invoke Criminal Rule 53 and order the former Linda Kious to testify against her husband, despite his claimed privilege to prevent her testimony against him under Criminal Rule 26(b)(2)(i).

Linda Osborne failed to appear for a scheduled deposition on March 21. Her whereabouts were still unknown when the state began calling witnesses in the Ieppert trial on March 23. The court issued a material witness warrant for her arrest.

On March 25, before the mid-day recess of the trial, the prosecution revealed that

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

Linda Osborne had just appeared voluntarily at the district attorney's office. The state announced that it would call on her to testify that afternoon, and the court then recessed until 2:00 p. m. Upon reconvening, the defendant advised the court that he wished to change his pleas on both the first degree murder and armed robbery counts to guilty. The court questioned the defendant concerning his plea change and eventually accepted his plea of guilty.

On March 29, 1977, the prosecution made its opening statement in the trial of the Dempe homicide. At the conclusion of that trial, the jury returned a verdict finding Osborne guilty of attempted robbery and first degree murder.

## I

Osborne now argues that the court failed to adequately determine whether he possessed the specific intent to kill—a necessary element of first degree murder—before accepting his change of plea during the trial of the Ieppert homicide. However, defendant raised this issue for the first time

more than two years after the judgment of conviction by adding it as a supplemental point on appeal.[1] Osborne never moved to withdraw his plea of guilty, as required by Criminal Rule 32(d).[2] While we did permit Osborne to raise this issue as a supplemental point on appeal, our permission should not be construed as a decision to waive the requirements of Criminal Rule 32(d). In *Gordon v. State*, 577 P.2d 701, 704–05 (Alaska 1978), we stated:

> "[W]e hold that a defendant cannot challenge the voluntariness of his plea on direct appeal from the judgment entered upon his plea. A motion to withdraw the plea must first be made in the superior court pursuant to the requirements of Rule 32(d). Since appellant has failed to make such a motion, his convictions must be affirmed." (footnote omitted).

In accordance with *Gordon*, we hold that Osborne must move to withdraw his plea pursuant to Criminal Rule 32(d) before he will be allowed to challenge its validity on appeal.

1. On July 23, 1979, we issued an order allowing counsel for the appellant to state a supplemental point on appeal challenging the validity of the change of plea procedure in the Ieppert case.

2. Alaska R.Crim.P. 32(d) provides:
   "(d) *Plea Withdrawal.*
   (1) The court shall allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct manifest injustice.
   (i) A motion for withdrawal is timely and is not barred because made subsequent to judgment or sentence if it is made with due diligence.
   (ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant demonstrates that:
   (aa) He was denied the effective assistance of counsel guaranteed to him by constitution, statute or rule, or
   (bb) The plea was not entered or ratified by the defendant or a person authorized to so act in his behalf, or
   (cc) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed, or

   (dd) He did not receive the charge or sentence concessions contemplated by the plea agreement, and
   (A) the prosecuting attorney failed to seek or opposed the concessions promised in the plea agreement or
   (B) after being advised that the court no longer concurred and after being called upon to affirm or withdraw his plea, he did not affirm his plea.
   (iii) The defendant may move for withdrawal of his plea without alleging he is innocent of the charge to which the plea has been entered.
   (2) Once the plea has been accepted by the court and absent a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right. Before sentence, the court may in its discretion allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.
   (3) A plea of guilty or nolo contendere which is not accepted or has been withdrawn shall not be received against the defendant in any criminal proceedings."

## II

Osborne argues that the trial court erred by invoking Criminal Rule 53 to relax application of the privilege against adverse spousal testimony contained in Criminal Rule 26(b)(2)(i).[3] In a contemporaneous decision, *Loesche v. State*, 620 P.2d 646 (Alaska 1980), we have held that the spousal testimonial immunity privilege is capable of being relaxed under Criminal Rule 53.[4] However, the situation in the case at bar is distinguishable from the situation presented in *Loesche*. In *Loesche*, the defendant's spouse was a willing and voluntary witness, and the marriage had disintegrated to the point that there was virtually no marital harmony to be fostered by applying the privilege. In the case at bar the defendant married his wife, an important witness for the prosecution, just a week before trial. Although the wife "voluntarily" appeared at the district attorney's office the day on which she testified, her appearance was prompted by a bench warrant for her arrest. It is apparent that the wife's testimony was not voluntary in the sense that she desired to testify against Osborne.

█ Osborne argues that there was no proof that his marriage was a sham, and that absent such proof the marriage must be regarded as valid. In our view, however, the circumstances under which the marriage was entered into permit an inference that the purpose of the marriage was to hinder justice, by preventing Linda's testimony. Neither the trial court nor we are required to ignore this reality. Moreover, in determining the scope of the marital privilege, i. e., in determining its marginal reach, a court may consider whether sound public policy would be served by applying the privilege in a situation of this kind. An eve-of-trial marriage, entered into when there is a strong motivation by one party to prevent the testimony of the other, should not be encouraged. It exalts form over substance, and it asks us to blind ourselves to the probable underlying motivation for the marriage. In these circumstances no affirmative proof of fraud needs to be adduced.

Compulsory testimony is the basic norm of our legal system. *See Branzburg v. Hayes*, 408 U.S. 665, 682, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626, 640 (1972). Correspondingly, testimonial privileges, other than those resting upon a constitutional basis, should be given a fairly narrow scope. We hold that the trial court correctly denied to Osborne the protection afforded by the privilege against adverse spousal testimony, and correctly applied Criminal Rule 53.[5] *See Trammel v. United States*, 445

---

3. Former Alaska R.Crim.P. 26(b)(2)(i) provided:
"A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent."

4. Alaska R.Crim.P. 53 provides:
"These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."
Osborne urges that Criminal Rule 53 is designed primarily for the expeditious administration of court business, and that it should not be used to cancel out a specific privilege. We find the argument unconvincing for several reasons.
First, at the time in question, the spousal privilege was contained in Criminal Rule 26. Criminal Rule 53 states that "these rules" may be relaxed where adherence to them will work an injustice. Thus, technically speaking, Rule 53 was applicable to the spousal privilege.

Second, although scholars sometimes disagree on whether evidentiary rules are substantive or procedural in nature, the great bulk of the rules of evidence are adjective law. The rules of evidence provide a system under which proof is admitted in various court proceedings. It should be observed that the current Alaska Rules of Evidence have been promulgated under the rule making power of this court. The rules of evidence are intimately connected with managing the business of the courts.

5. Our current Alaska Rule of Evidence 505(a)(2)(D)(iv), which was not in effect at the time of Osborne's trial, makes the privilege inapplicable to a crime committed prior to the marriage. Under the current rule, the defendant may not marry a key prosecution witness and thereby gain immunity from the new spouse's adverse testimony.
Alaska R.Evid. 505 provides in relevant part:
"*Husband-Wife Privileges.*
(a) *Spousal Immunity.*
(1) General Rule. A husband shall not be examined for or against his wife, without her

U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *United States v. Apodaca*, 522 F.2d 568, 570–71 (10th Cir. 1975). *See also United States v. Fisher*, 518 F.2d 836, 839 (2d Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975).

## III

Osborne contends that the court committed reversible error by failing to require his presence at a deposition of District Attorney Harry Davis, conducted on the morning of March 18, 1977. Lloyd Hoppner, who represented Osborne's attorney, Lance Parrish, had previously served District Attorney Davis with a subpoena to be deposed concerning a contempt charge brought against Parrish. Davis' deposition on the morning of March 18 was thus meant to serve as a discovery procedure providing background information for the contempt charge, which was to be decided later that afternoon. Both District Attorney Davis and the state assistant attorney general present at the hearing objected to holding Davis' deposition in Osborne's absence. Mr. Parrish, Mr. Hoppner, and Mr. Stepovich, Osborne's appointed co-counsel, did not object. The trial court ruled that the deposition concerned only Parrish's contempt and was not directly connected with Osborne's charges. Thus Osborne's presence was not necessary. Davis' deposition began, but was not completed by the afternoon recess.

When the court reconvened that afternoon with the defendant present, all of the parties involved agreed not to continue with Davis' deposition. Instead, in the interests of judicial economy, the state and the court assented to a suggestion by the defense to a proceeding combining the scheduled hearing on the contempt charge with a hearing on a motion brought by the state to compel Linda Kious' testimony. The issue in the

present case arises because this later hearing constituted a "stage of trial" [6] requiring the defendant's presence, and the court did not definitely state that it would not consider Davis' testimony taken at the morning deposition for the purposes of the contempt charge, when ruling on the marital privilege issue presented by Osborne's case.

In *State v. Hannagan*, 559 P.2d 1059, 1064 (Alaska 1977), we stated that:

"[T]here is a constitutional requirement that the defendant personally waive his right to be present at trial in a knowing and intelligent manner. Absent the defendant's express waiver, an attorney may not waive this right for his client." (citing *Lee v. State*, 509 P.2d 1088 (Alaska 1973)).

This constitutional right has been implemented as a procedural requirement by Criminal Rule 38. *See* note 6, *supra*.

In the present case, we find that the trial court did not err by failing to require Osborne's attendance at the morning deposition of District Attorney Davis. While the trial court did not expressly state that it would disregard Davis' deposition testimony when ruling on the marital privilege issue, this omission in itself does not have the effect of merging the morning deposition with the combined hearing which occurred that afternoon for the purposes of Criminal Rule 38(a). The court was well aware of the distinctions between the contempt proceeding and the hearing on the marital privilege issue.

Moreover, the defendant has made no showing that his absence from the morning deposition might reasonably have prejudiced his defense. *See State v. Hannagan*, 559 P.2d at 1065. Since every material matter covered by Davis' deposition was also sufficiently covered by the testimony

---

consent, nor a wife for or against her husband, without his consent.

(2) Exceptions. There is no privilege under this subdivision:

.　　.　　.　　.　　.

(D) In a proceeding in which one spouse is charged with:

.　　.　　.　　.　　.

(iv) A crime prior to the marriage."

6. Alaska R.Crim.P. 38 provides:

"(a) *Presence Required.* The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and at *every stage of trial* . . . ." (emphasis added).

of other witnesses made in Osborne's presence, it is most unlikely that any prejudice could have resulted from the defendant's absence from the morning deposition. *See Jefferson v. Metropolitan Mortgage and Securities Company of Alaska, Inc.*, 503 P.2d 1396, 1398–99 (Alaska 1972). We hold that as to this issue there was no error.

### IV

■ The trial court in the Dempe homicide case prohibited the defense from examining Cecil Vest, a defense witness, concerning a contact Vest had with Detective Raymond Smith, the state's chief investigating officer in the case. The defense contends that Vest's testimony should have been allowed for the purpose of showing that Smith was biased against Osborne, or, alternatively, because it would have constituted an "admission of a party." A decision of this type by the trial court concerning the examination of witnesses is reviewable only for abuse of discretion, i. e., "whether the reasons for the exercise of discretion are clearly untenable and unreasonable." *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970). Here it is difficult to see how the excluded evidence had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[7] Thus, we hold that the trial court's decision to exclude the testimony of Cecil Vest did not constitute such an abuse of discretion.

The convictions are affirmed.

AFFIRMED.

BURKE, J., not participating.

---

**7.** Alaska R.Evid. 401. Although the current Alaska Rules of Evidence were not in effect when this case was tried, Rule 401 is reflective of the common law concept of relevancy. *See* Evidence Rules Commentary, Rule 401.