**Robert E. JACKSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 7214.

Court of Appeals of Alaska.

Feb. 15, 1985.

Michael S. Pettit, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Anne Carpeneti, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Robert E. Jackson and Jimmie Lee Eacker were jointly indicted for first-degree robbery, AS 11.41.500(a)(1). Eacker pled no contest and testified against Jackson at Jackson's trial prior to being sentenced. The jury convicted Jackson. Jackson appeals. We reverse.

### FACTS

On January 28, 1982, at approximately 1:44 a.m., the Time Saver Grocery in Kenai was robbed at gunpoint. Linda Bartels was working there at the time. Officer Michael Anastay arrived within five minutes with his specially trained police dog. The dog followed the robber's scent to the rear of the store, where Officer Anastay found fresh tire tracks and footprints in the snow. The footprints ended alongside the right side of the tire tracks, where the passenger side would have been. The tracks were measured and photographed.

Sergeant Dorcas followed the tracks to the Rock and Roll Clinic, a night club, where a vehicle was found with tires that matched the tracks. The vehicle belonged to Jeff Johnson. Johnson, Jackson and Eacker were all at the club when the officers arrived. On April 9, 1982, Eacker contacted the police, confessed to the robbery, and implicated Jackson as the driver of the getaway car.

At trial, Jeff Johnson testified that he had loaned Jackson his car at about 6:00 p.m. on the night of the robbery. Jackson and Eacker had helped a friend, Sherry Betz, and her roommate move some furniture between 6:00 p.m. and 9:00 p.m. Both Betz and Jerry Carlson, a bouncer at the

Rock and Roll Clinic, testified that they thought Jackson had arrived at the club around 11:00 p.m. Later in the evening Betz noticed that Jackson and Eacker had left the Rock and Roll Clinic, but they returned some time before closing time. Betz also said that Jackson had tried to persuade her to provide him with an alibi by saying that she had been with him all night, but she refused. Jackson testified that sometime between 11:00 p.m. and midnight he had been parked next to Doyle's Fuel Service warehouse just past the Time Saver Grocery on the North Road, waiting to see if Eadie of Eadie's Pawn Shop might show up so that Jackson could pawn a CB radio. He waited about ten or fifteen minutes, then went to the Rock and Roll Clinic. He denied participation in the Time Saver robbery.

Prior to trial, Jackson learned that his codefendant, Eacker, was the prime suspect in a murder case that was then under investigation. Immediately before confessing his involvement in the Time Saver robbery, Eacker had been questioned by the police about the disappearance of Toni Lister. Lister's body was found in Seward on April 17, 1982, a week after Eacker's confession to the robbery. Jackson filed a pretrial discovery motion requesting police reports of the pending murder investigation. Though the court denied discovery to Jackson, the state agreed to permit defense counsel to examine the reports for a few hours in an *in camera* setting. It was Jackson's intent to use the reports to discredit Eacker's testimony by showing his bias or motive to cooperate with the police on the robbery in hopes of obtaining leniency on the murder charge.

During *voir dire* Jackson was not allowed to question jurors about their knowledge of the Lister homicide. However, two jurors volunteered their knowledge of Eacker's possible connection to the Seward murder. The state challenged these jurors for cause, and they were excused.

At trial, over defense objection, the court issued a protective order precluding counsel from mentioning that Eacker was the suspect in a Seward homicide investigation. Judge Cranston ruled that Jackson would be permitted to cross-examine Eacker only as to whether he had been questioned by police about another "major felony matter" at the time of his confession.

However, Eacker repeatedly invoked the fifth amendment when asked about his involvement in the other "major felony." Eacker declined to acknowledge that he had become involved in a police investigation of a major felony. After Jackson challenged Eacker's repeated invocation of the fifth amendment, Judge Cranston conducted an *in camera* hearing with Eacker's counsel. Following the hearing, Judge Cranston ruled that Eacker's invocation of the fifth amendment with respect to questions concerning the Lister murder investigation was valid.

Judge Cranston did allow Jackson's counsel to continue questioning Eacker about his involvement as a suspect in another "major felony matter," but Eacker was permitted to invoke the fifth amendment in response to all such questions. Eacker declined to answer whether he knew he was under investigation for another felony at the time he confessed to the Time Saver robbery or whether he believed that he could help himself in another case by cooperating on the Time Saver incident. Eacker acknowledged that, before his confession, he specifically requested to speak with Lieutenant Mahurin of the Kenai Police Department because he had dealt with Mahurin in the past, had a friendly relationship with him, and believed Mahurin could help with his problem. However, Eacker invoked the fifth amendment when asked if the problem they had talked about included another felony. Eacker further declined to answer when asked if he had made any statement to Mahurin about another major felony matter before confessing to the robbery.

Lieutenant Mahurin testified that on the afternoon of April 9 he had been informed that Eacker was at the Kenai Police Department and had asked to speak with him. Mahurin went to the station and first

talked with Eacker "regarding another pending investigation." Mahurin testified that he then "told Mr. Eacker that I was glad that he had come in, that I had been wanting to speak to him about something anyway, and told him that what I wanted to speak to him about was the robbery at the Time Saver Grocery Store." Under cross-examination Mahurin stated that, prior to taking Eacker's confession for the robbery, he had discussed the "other felony" and other matters with Eacker for approximately twenty-five minutes. Mahurin was not questioned further about the other felony matter.

## DISCUSSION

■■■ Jackson's primary argument is that he was denied his constitutional right to confront and cross-examine Eacker by putting Eacker's confession in its proper setting and demonstrating to the jury Eacker's possible bias: his hope that by confessing to the Time Saver robbery and implicating Jackson, he might influence the outcome of the murder investigation in the Lister case. Jackson relies primarily on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).[1] As a rule, cases dealing with the right to confront and cross-examine a witness who has invoked the fifth amendment distinguish between cross-examination as to matters directly related to the witness' testimony on direct examination and cross-examination as to collateral matters. *See generally* Annot., 55 A.L.R.Fed. 742 (1981). When a witness invokes the fifth amendment as to a collateral matter the defendant is not thereby deprived of his right to confrontation. However, when a witness' refusal to answer specifically relates to testimony given on direct examination, the defendant's right to confrontation is implicated. *See, e.g., Dunbar v. Harris*, 612 F.2d 690

(2d Cir.1979). Questions involving a witness' general credibility are usually deemed collateral, but specific questions relating to a witness' bias are not. *See Evans v. State*, 550 P.2d 830, 837 (Alaska 1976); *Whitton v. State*, 479 P.2d 302, 317 (Alaska 1970). As held in *Davis v. Alaska*, 415 U.S. at 316–17, 94 S.Ct. at 1110, 39 L.Ed.2d at 354:

> A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

■■■ Thus, cross-examination as to bias is not deemed collateral, and refusal of a prosecution witness, on fifth amendment grounds, to answer questions relating to bias will implicate the defendant's confrontation right. *See, e.g., United States v. Gambler*, 662 F.2d 834 (D.C.Cir.1981). Under such circumstances, the trial court is required to strike relevant testimony given by the witness on direct examination unless the specific subject matter addressed by the question as to which the privilege has been invoked is cumulative or remote, or unless the defendant is afforded an adequate independent means to establish the witness' bias. *See, e.g., United States v. Brown*, 634 F.2d 819 (5th Cir.1981); *United States v. Seifert*, 648 F.2d 557 (9th Cir.

---

**1.** He also relies on a number of Alaska cases that deal with the scope of the constitutional right to confrontation. *See Coffey v. State*, 585 P.2d 514, 522–23 (Alaska 1978); *Evans v. State*, 550 P.2d 830, 834–41 (Alaska 1976); *Hutchings v. State*, 518 P.2d 767 (Alaska 1974); *Fields v. State*, 487 P.2d 831, 845–46 (Alaska 1971); *R.L.R. v. State*, 487 P.2d 27, 43–44 (Alaska 1971);

and *Whitton v. State*, 479 P.2d 302, 316–18 (Alaska 1970). These cases stand for the general proposition that the trial court violates a defendant's constitutional right of confrontation if it unduly restricts his cross-examination of prosecution witnesses concerning possible motives for falsely accusing the defendant.

1980); *Fountain v. United States*, 384 F.2d 624 (5th Cir.1967), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968).

The vital question in each case is whether the defendant's fundamental right to challenge the accuracy of a witness' testimony through cross-examination has been substantially impaired.

> The ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony. If he has, so much of the direct testimony as cannot be subjected to sufficient inquiry must be struck. The distinction is generally drawn between invoking the privilege as to "collateral matters," not requiring the striking of direct testimony, and invoking it as to "direct" matters. But the line between "direct" and "collateral" is not clear, and the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony.

*Fountain v. United States*, 384 F.2d 624, 628 (5th Cir.1967) (citations omitted), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). *See also United States v. Brown*, 634 F.2d at 824–25; *United States v. Diecidue*, 603 F.2d 535, 551–52 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

■ In the present case, we conclude that Eacker's invocation of his fifth amendment right as to matters relating to the Lister murder investigation deprived Jackson of his right to confrontation. Eacker invoked the fifth amendment as to virtually all questions concerning the possible impact of the Lister murder investigation on his motivation for confessing the Time Saver robbery and for implicating Jackson. These questions bore directly on the issue of Eacker's motivation for implicating Jackson, *i.e.*, his bias, and were not collateral.

Nor can the questions fairly be deemed cumulative of testimony tending to show that Eacker might have been motivated by a desire to obtain favorable treatment for himself for his role in the Time Saver robbery. The relevance of the Lister murder evidence was not to demonstrate that Eacker might be subject to the level of bias reasonably attributable to an accomplice. Rather, its relevance was to show an independent and potentially far more influential source of bias. In this regard, it is simply beside the point that Eacker's status as an accomplice was demonstrated and that the jury was instructed accordingly.

Evidence that Eacker was a prime suspect in the Lister murder and that the murder investigation was pending at the time of his confession on April 9 would have effectively added a new dimension to the issue of bias. Unless the jury was aware that Eacker knew he was a suspect in the Lister murder investigation, it could easily have concluded that Eacker had no reason to confess his own complicity in the Time Saver robbery other than a desire to be truthful and forthright.[2] If the jury believed that Eacker's confession was motivated only by his desire to tell the truth, then it could readily have discounted the possibility that he had falsely implicated Jackson as a codefendant merely to gain more favorable treatment.

Under these circumstances, full cross-examination as to Eacker's knowledge of the Lister murder investigation was essential, since the questioning could have demonstrated that when Eacker confessed to the Time Saver robbery he had substantially more to gain than the possibility of favorable treatment on the robbery charge. Had full cross-examination been allowed, Jackson could have directly called into

---

**2.** On appeal the parties have provided no information concerning the current status of the Lister murder investigation or of Eacker's actual involvement in that offense. Accordingly, discussion of the circumstances disclosed by Eacker's counsel during the *in camera* hearing before Judge Cranston would be inappropriate in this opinion. It is sufficient to note, however, that nothing stated in the *in camera* proceedings would support a conclusion that the pendency of the murder investigation did *not* play a role in Eacker's decision to confess to the Time Saver robbery.

question Eacker's motivation for confessing to participation in the robbery. The jury would have been presented with a substantial reason to question whether Eacker could be viewed as a basically honest witness. Thus, the jury might have been far more receptive to Jackson's argument that Eacker's confession and his subsequent testimony were false.

Under the circumstances, we think the holding of the court in *Davis v. Alaska* is apt:

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's [the witness'] testimony which provided "a crucial link in the proof ... of petitioner's act."

*Davis*, 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354 (citation omitted).

■ We conclude that, in the circumstances of this case, evidence of Eacker's possible bias stemming from the Lister murder investigation cannot fairly be deemed cumulative of other evidence indicating possible bias.[3] We further conclude that Jackson's limited opportunity to question Lieutenant Mahurin about the Lister murder investigation did not afford him an adequate independent means of establishing Eacker's bias. Conceivably, Jackson's inability to question Eacker fully as to bias might have been remedied had Jackson been permitted to develop the same theory of bias through examination of Lieutenant Mahurin. However, Judge Cranston precluded Jackson from asking any questions from which the specific nature of the crime or investigation could have been inferred by the jury. These limitations inhibited Jackson's trial counsel from attempting to establish Eacker's bias through Mahurin's testimony.

■ Upon review of the entire record, we are satisfied that Eacker's invocation of the fifth amendment privilege as to virtually all questions dealing with the Lister murder investigation "created a substantial danger of prejudice by depriving [Jackson] of the ability to test the truth of [Eacker's] direct testimony." *Fountain v. United States*, 384 F.2d at 628. Accordingly, we hold that Jackson's inability to question Eacker fully as to bias constituted a deprivation of Jackson's right to confrontation, requiring reversal of the conviction.[4]

---

**3.** The holding of *Robinson v. State*, 593 P.2d 621, 623–24 (Alaska 1979), is inapposite to the present case. In *Robinson* the defendant was deprived of the opportunity to cross-examine the state's witness as to whether he had actually committed a crime for which charges were then pending against him in the state of California. Although the witness invoked the fifth amendment, the defendant was able to establish the existence and nature of the pending charges, and the witness admitted that he knew of the fact that charges were pending. Moreover, the witness admitted other criminal conduct from which a desire to curry favor with the police could have been inferred. Under those circumstances, it is apparent that cross-examination of the witness concerning actual commission of the California offense would have added nothing significant to the evidence of bias that already existed in the record.

**4.** In reaching our conclusion, we reject the notion that Jackson's ability to argue bias from Eacker's repeated invocation of the fifth amendment constituted an adequate substitute for cross-examination. It would have been impermissible for the jury to draw inferences from Eacker's invocation of the fifth amendment, and it would be improper for this court to presume that the jury drew such inferences. Jackson's counsel, in arguing the case to the jury, could not expressly rely on Eacker's invocation of the fifth amendment. Similarly, since questions asked by counsel during the trial did not constitute evidence, the jury could not properly have relied on facts inferrable from Jackson's cross-examination as a source for inferring Eacker's bias.

In any event, it is apparent that the possibility that the jury might have drawn inferences concerning Eacker's state of mind from his invocation of the fifth amendment would not constitute an adequate substitute for cross-examination:

> Confrontation means more than being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination."

*Davis v. Alaska*, 415 U.S. at 315, 94 S.Ct. at 1110, 39 L.Ed.2d at 353, *quoting Douglas v. Alabama,*

We must separately consider Jackson's claim that Eacker's testimony was not sufficiently corroborated to satisfy AS 12.45.020.[5] If the corroborating evidence against Jackson was insufficient, retrial of this case would not be permissible. Corroborating evidence included testimony that Johnson loaned his car to Jackson on the night of the robbery, that tire tracks led from the scene of the robbery to the Rock and Roll Clinic and matched Johnson's tires, that Jackson was at the Rock and Roll Clinic before the robbery and after the robbery but was not there during the period of time when the robbery occurred, that Jackson asked Sherry Betz to provide a false alibi for him, and that Jackson admitted being in the vicinity of the Time Saver Grocery at the time of the robbery. Under the circumstances, Eacker's testimony was sufficiently corroborated to satisfy AS 12.45.020.

The judgment of the superior court is REVERSED and this case is REMANDED for a new trial.

SINGLETON, J., dissents.

380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

**5.** Our disposition of the confrontation issue makes it unnecessary for us to decide the other issues raised on appeal by Jackson, which concern his inability to obtain discovery of materials dealing with the Lister murder investigation. In the event controversy should again arise on remand, the court should reevaluate the question in light of the current status of the Lister murder investigation and the present need for confidentiality.

**1.** It appears that the trial court gave an instruction similar to Alaska Pattern Jury Instructions (Criminal 1.22) which provides:

> I instruct you that _____ was, as a matter of law, an accomplice if the crime charged in this case was committed. The testimony of such witness should be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled after examining it with care and caution in the light of all the evidence in the case.

**2.** *Id.*

SINGLETON, Judge, dissenting.

Jimmie Lee Eacker testified that he committed the armed robbery of the Time Saver Grocery. He named defendant, Jackson, as an accomplice who drove the getaway car. The jury was specifically instructed that Eacker was an accomplice,[1] that it must view his testimony with distrust[2] and that his testimony was insufficient for conviction unless it was corroborated.[3] In effect, the jury was told that Eacker was biased or interested in the outcome of Jackson's case as a matter of law. Despite this overwhelming evidence of "bias" emphasized by the jury instructions, Jackson sought to introduce cumulative evidence on the issue of bias by showing that Eacker was a prime suspect in an unrelated pending murder investigation. The trial court did not foreclose this issue entirely; Judge Cranston permitted Jackson to establish that Eacker had been questioned in a separate, distinct major felony matter. During final argument the prosecutor conceded that Eacker was interested in the outcome and therefore biased and that the jury should consider that other felony in determining whether Eacker truthfully identified Jackson as his accomplice. Despite

**3.** It appears that the court gave an instruction similar to form jury instruction Number 1.23 which states:

> The defendant cannot be convicted on the testimony of an accomplice unless the testimony is corroborated by other evidence which tends to connect the defendant with the commission of the crime. The requirement of corroboration is based on an assumption that an accomplice might falsely accuse others of a crime in order to purchase for himself immunity from punishment. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.
>
> It is not necessary that the corroboration be sufficient in itself to establish every element of the offense, or that it corroborate every fact to which the accomplice testified.
>
> Evidence corroborates when it induces a rational belief that the narrative of the accomplice is truthful; when it dispels the assumed notion that he is an inventor of facts and incidents. If it does this the credibility of the accomplice's testimony should be evaluated in the same manner as the testimony of other witnesses.

See AS 12.45.020.

this record and the overwhelming corroborative evidence outlined in the majority opinion, a majority of this court finds that Judge Cranston abused his discretion under A.R.E. 403 and by implication A.R.E. 611(a) by not *sua sponte* striking Eacker's testimony and acquitting Jackson.[4] The majority errs in overlooking the fundamental distinction between appellate court reaction to trial court restrictions on the cross-examination of admitted accomplices and the same restrictions on cross-examination of nonaccomplice police informers. Restrictions on cross-examination of accomplices to show bias are routinely affirmed on appeal, while the very same cross-examiantion to show a nonaccomplice informer's bias, if restricted, results in reversal. Eacker was an accomplice. The authority relied upon by the majority addresses nonaccomplice informers. That authority does not justify the result reached in this case.[5] I dissent.

A criminal defendant may attack the general credibility of a prosecution witness by showing that the witness has been convicted of a felony involving dishonesty or false statement. A.R.E. 609(a). He may not attack the witness' general credibility by showing that the witness is suspected of unrelated criminal activity. A.R.E. 608(b). A criminal defendant must, however, be given a reasonable opportunity to show, through cross-examination, that a prosecution witness is not disinterested.[6] While jurors are no longer instructed that witnesses are presumed to tell the truth, *see Oksoktaruk v. State,* 611 P.2d 521, 525–27 (Alaska 1980); *Galauska v. State,* 532 P.2d 1017, 1018 (Alaska 1975), disinterested witnesses tend to be believed by juries. *See State v. Contreras,* 674 P.2d 792, 799–802 (Alaska App.1983), *petition for hearing granted* (Alaska, April 5, 1984). For this reason the trial court has no discretion to absolutely prohibit a defendant from inquiring into a prosecution witness' possible

4. Without Eacker's testimony there was insufficient evidence to convict Jackson. It is possible that the state could give Eacker immunity in the murder investigation to preserve his testimony in the event of retrial or that Jackson could explore the Lister murder investigation through Lieutenant Mahurin.

5. Men and women who befriend potential criminals and, in league with the police, purchase drugs and then testify against their vendors are not accomplices. *Taylor v. State,* 600 P.2d 5, 9 n. 16 (Alaska 1979); *Evans v. State,* 500 P.2d 830, 841 (Alaska 1976); *Howard v. State,* 496 P.2d 657, 660 (Alaska 1972). The supreme court has recognized, however, that some, but not all, informers may be highly likely to falsely accuse a defendant. In an appropriate case the jury should be instructed to consider such informer's testimony with greater caution than that of the ordinary witness. *Evans,* 550 P.2d at 842; *Fresneda v. State,* 483 P.2d 1011, 1015 (Alaska 1971). There is a substantial distinction, however, between an informer instruction and an accomplice instruction. The jury is informed that the accomplice's testimony must be viewed with distrust, while police informer's testimony should be viewed with caution if, but only if, the defendant demonstrates that the witness held a bias or self-interest likely to influence him, *i.e.,* that the informer provides evidence against the defendant: (1) for pay; (2) for immunity from punishment; or (3) for personal advantage or vindication, *Evans,* 550 P.2d at 843, *Fresneda,*

483 P.2d at 1015, and it is to qualify for the benefits contained within the informer instruction, namely, to persuade the jury that the witness in question is within the class of informers whose testimony should be viewed with caution and weighed with great care that the defendant must be given broad leeway to engage in cross-examination of police informers to show bias. *Cf. Fresneda,* 483 P.2d at 1016 n. 17. The distinction between accomplices, whom the jury is instructed to distrust, and informers, whom the defendant must prove to be biased before the jury is told to distrust them, explains why courts consistently affirm trial court restrictions on cumulative evidence to show accomplice bias, while reversing similar restrictions on cumulative evidence to show a nonaccomplice informer's bias.

6. For purposes of analysis it is useful to distinguish between bias and interest. "Bias" includes all varieties of hostility or prejudice against the defendant personally or favor to the state personally. In contrast, "interest" means the specific inclination which is apt to be produced by the relationship between the witness and the cause at issue in the litigation, *i.e.,* the benefits or detriments that the witness is likely to incur depending on the outcome of the criminal prosecution under consideration. *See United States v. Gambler,* 662 F.2d 834, 844 (D.C.Cir. 1981) (Mikva, J., dissenting). In most cases it is the accomplice's or informer's "interest" rather than "bias" that is in issue.

bias or interest in the outcome, even if the evidence of bias is a possible desire to curry favor with the prosecution because of the witness' unrelated criminal activity. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 629 (1931).

Once a defendant has established a witness' bias or interest, the trial court has substantial discretion to exclude further evidence of bias or interest under its general authority to limit the scope of proof. A.R.E. 403, 611(a). *See, e.g., Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353; *Alford v. United States*, 282 U.S. at 694, 51 S.Ct. at 220, 75 L.Ed. at 629; *United States v. Touchstone*, 726 F.2d 1116, 1122 (6th Cir.1984); *United States v. Brutzman*, 731 F.2d 1449, 1452 (9th Cir.1984); *United States v. De Gudino*, 722 F.2d 1351, 1354 (7th Cir.1983); *United States v. Haimowitz*, 706 F.2d 1549, 1558–59 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *United States v. Gambler*, 662 F.2d 834, 838–39 (D.C.Cir.1981); *United States v. Diecidue*, 603 F.2d 535, 550–51 (5th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *United States v. Lustig*, 555 F.2d 737, 748–49 (9th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); *Austin v. United States*, 418 F.2d 456, 459 (D.C.Cir.1969).

*Alford* and *Davis* were cases in which the trial judge precluded all or nearly all inquiry into a key witness' motive for testifying. *Touchstone*, 726 F.2d at 1122.

> Where a trial court has limited but not totally precluded cross-examination as to motive, "the issue is whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias."

*Id.* at 1123 (citations omitted).

In determining whether a jury has sufficient information to make a "discriminating appraisal" of a witness' motives and bias, it is necessary to understand the purposes for which the jury should use such informa-tion. The majority errs in viewing "bias" as a talisman which when uttered requires trial courts to permit extensive inquiries into otherwise unrelated criminal activity by prosecution witnesses. The majority's failure to focus on the precise function evidence of bias performs substantially undermines its analysis of the law and the facts. Evidence of bias is offered to show that the witness has a reason for giving less than truthful testimony and that therefore the testimony given must be critically evaluated. Thus, where a witness is an admitted accomplice, subject to criminal sanction, he has a clear interest in the outcome of the criminal prosecution against the defendant and the jury must be instructed: first, that the witness' testimony must be viewed with distrust, and second, that the defendant cannot be convicted solely on the uncorroborated testimony of the witness. These instructions serve to insure that the jury will not mistake the witness for a disinterested person but will carefully consider his or her testimony in light of the corroborating evidence recognizing the witness' substantial motivation for dishonesty.

In the instant case Eacker was an admitted accomplice. The jury was instructed that his testimony was to be viewed with distrust and that Jackson's conviction could not be based upon that testimony unless it was corroborated. Consequently, *Davis* and *Alford* were satisfied. The jury had sufficient evidence concerning formative events to make a discriminating appraisal of his motives. Where the defendant has been afforded a reasonable opportunity to establish a witness' bias or interest in the outcome of a criminal prosecution, whether to permit further cross-examination regarding additional bases for an inference of bias or interest is within the discretion of the trial court. Where the witness in question is an admitted accomplice and the jury is instructed to view his testimony with distrust and only convict on the basis of the testimony if the evidence is corroborated, the constitutional threshold has been crossed; bias has been established, and

whether to allow additional evidence is a matter within the trial court's discretion.

Alaska cases dealing with cross-examination for bias consistently affirm restrictions on cross-examination where the reasons for the exercise of discretion are not untenable and unreasonable. *See, e.g., Osborne v. State*, 623 P.2d 784, 789 (Alaska 1981); *Taylor v. State*, 600 P.2d 5, 7–8 (Alaska 1979); *Robinson v. State*, 593 P.2d 621, 623–24 (Alaska 1979); *Coffey v. State*, 585 P.2d 514, 522–23 (Alaska 1978); *Thomas v. State*, 522 P.2d 528, 532–34 (Alaska 1974); *Gonzales v. State*, 521 P.2d 512, 514–15 (Alaska 1974).

The supreme court has reversed convictions for limitations on cross-examination to show bias only in cases where the trial court relied on an untenable reason, *i.e.*, a belief that the evidence of bias or interest was "irrelevant." *See Evans v. State*, 550 P.2d 830, 834–41 (Alaska 1976); *Hutchings v. State*, 518 P.2d 767 (Alaska 1974); *Fields v. State*, 487 P.2d 831, 845–46 (Alaska 1971); *R.L.R. v. State*, 487 P.2d 27, 43–44 (Alaska 1971); *Doe v. State*, 487 P.2d 47, 57–58 (Alaska 1971); *Whitton v. State*, 479 P.2d 302, 316–18 (Alaska 1970). In none of these cases was the prosecuting witness an admitted accomplice. In *R.L.R.*, *Doe*, and *Whitton* the trial court entirely precluded cross-examination to show bias. None of these cases supports a reversal in Jackson's case.

In this case Judge Cranston clearly recognized the relevance of the evidence of Lister's murder to show bias on Eacker's part. He permitted cross-examination as to whether Eacker thought that by cooperating on the "other felony matter," he was going to get leniency or special treatment in the Time Saver case. Jackson was permitted to pursue this line of inquiry with both Eacker and Lieutenant Mahurin. Mahurin was apparently fully informed regarding the progress of the Lister murder investigation. Judge Cranston issued a

protective order relative only to mentioning that the major felony in which Eacker was a suspect was the Lister murder. It was certainly a proper exercise of his discretion to exclude such evidence due to the danger of unfair prejudice. A.R.E. 403, 611(a).[7] In this context, undue prejudice means "an undue tendency to suggest decision on an improper basis commonly, though not necessarily, an emotional one." A.R.E. 403, Commentary at 69. Certainly there was a substantial risk in this case that a jury with knowledge of the Lister murder and Eacker's potential involvement in that murder might acquit Jackson, not because they believed Eacker was untruthful or Jackson innocent, but because of hostility to the state's using a murderer as a witness. This is clearly not a proper use of evidence of bias or interest.

Evidence that Eacker was the suspect in the Lister murder also raises legitimate concerns about confusion of the issues and prolonging the case. A.R.E. 403. The state's legitimate fear that the jury would not consider the evidence solely on the issue of Eacker's credibility, but rather would reject his testimony out of hand because they found him to be an evil person, would no doubt motivate the state to attempt to prove that Eacker did not kill Lister, or at least that there was insufficient evidence to establish that Eacker killed Lister. Thus the jury's attention would be shifted from Jackson's responsibility for the Time Saver burglary to Eacker's responsibility for the death of Lister. In a very real sense the sideshow would swallow up the circus.

In determining whether a restriction on cross-examination constitutes an abuse of discretion, the test is "whether the reasons for the exercise of discretion are clearly untenable and unreasonable." *Osborne v. State*, 623 P.2d 784, 789 (Alaska 1981); *R.L.R. v. State*, 487 P.2d 27, 44 (Alaska 1971); *Lewis v. State*, 469 P.2d 689, 695

7. Alaska Rule of Evidence 403 provides:
   Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(Alaska 1970). A trial judge must make evidentiary decisions within a short compass of time. As the Third Circuit pointed out in interpreting comparable Federal Rule of Evidence 403:

In view of the revision [made in Federal Rule 403 which is substantially identical to Alaska Rule of Evidence 403] it is manifest that the draftsmen intended that the trial judge be given a very substantial discretion in "balancing" probative value on the one hand and "unfair prejudice" on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise because of a differing view of the highly subjective factors of (a) the probative value, or (b) the prejudice presented by the evidence.... The trial judge, not the appellate judge, is in the best position to assess the extent of the prejudice caused to a party by a piece of evidence. The appellate judge works with a cold record whereas the trial judge is there in the courtroom.

A reversal based upon appellate disagreement with the trial judge's balancing under Rule 403 necessarily must be founded upon highly subjective reasons, which, experience teaches us, are not always readily recognizable or definable.

*United States v. Long,* 574 F.2d 761, 767 (3d Cir.1978), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657.

In interpreting Federal Rule of Evidence 403, the Third Circuit adopted the test that the trial judge will be upheld "unless he acts arbitrarily or irrationally." *Id.* at 767, *quoting United States v. Robinson,* 560 F.2d 507, 515 (2d Cir.1977) (*en banc*). This is precisely the test the Alaska Supreme Court has always applied to restrictions on cross-examination to show bias. *Osborne,* 623 P.2d at 789. Judge Cranston's careful consideration of the facts and evidence hardly constitutes an arbitrary or irrational action. The protective order simply did not amount to an unconstitutional violation of Jackson's confrontation rights under the Sixth Amendment. I would affirm.[8]

**8.** Jackson did not move to strike Eacker's direct testimony based upon Eacker's invocation of his fifth amendment rights. It is therefore unnecessary for us to reach that issue unless the failure to strike constituted plain error. Alaska R.Crim.P. 47(b). Under the circumstances it was not error at all, let alone plain error. Nevertheless, since the majority raises the issue, a few additional comments are in order.

Judge Cranston certainly exercised adequate care to determine that Eacker's claim of fifth amendment rights was well-founded. *See Evans v. State,* 550 P.2d 830, 846 (Alaska 1976) (the privilege against self-incrimination is in constant conflict with the accused's right to present an effective defense; hence the trial judge should endeavor to accommodate those rights to the fullest extent possible and should explore the basic validity of the witness' claim out of the presence of the jury).

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that a court could not, on policy grounds, preclude a defendant from cross-examining a key prosecution witness regarding the witness' juvenile probationary status where the cross-examination was relevant to show bias or interest. There was no other evidence in the case showing that the prosecuting witness had a bias or interest in the outcome of the case, and the sole ground for precluding cross-examination was a state policy interest in protecting the confidentiality of a juvenile offender's records. *Davis* did not involve a limitation of cross-examination based upon the prosecuting witness' invocation of his or her constitutional privilege against self-incrimination. *See Thomas v. State,* 522 P.2d 528, 533 (Alaska 1974). In the intervening years, federal and state courts have resolved the dilemma posed by a conflict between the witness' fifth amendment rights and the defendant's confrontation rights by holding that, where a witness properly asserts his fifth amendment rights in response to cross-examination, the privilege should be upheld but the court may be required to strike the witness' testimony on direct if, and only if, assertion of the privilege prevents the jury from having a fair basis for evaluating the credibility of the witness and the truth of his testimony. *See, e.g., United States v. Pelusio,* 725 F.2d 161, 169 (2d Cir.1983); *United States v. Gullett,* 713 F.2d 1203, 1208–09 (6th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984); *United States v. Brown,* 634 F.2d 819, 824 and n. 2 (5th Cir.1981); *United States v. Seifert,* 648 F.2d 557, 561–62 (9th Cir.1980); *Dunbar v. Harris,* 612 F.2d 690, 692–94 (2d Cir. 1979); *United States v. Diecidue,* 603 F.2d 535, 551–52 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *United States v. Lipton,* 467 F.2d 1161, 1166–67 (2d Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); *Fountain v. United*

*States,* 384 F.2d 624, 628 (5th Cir.1967), *cert. denied,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

The analysis in these cases is marred by the attempt to distinguish between cross-examination into direct and collateral matters without first reaching an agreement as to the meaning of the terms collateral and direct. Some of the cases do appear to use the term collateral by reference to the general rules governing impeachment by contradiction through extrinsic evidence. *See Babcock v. State,* 685 P.2d 721, 727 n. 1 (Alaska App.1984). Other courts appear to use the terms in a more general sense to distinguish between cross-examination relating to the details of the direct examination on the one hand which are deemed direct matters and cross-examination regarding credibility, including bias, which are deemed collateral matters. *See* Annot., 55 A.L.R.Fed. 742 (1981). Illustrative of the former use of the term "collateral" is *United States v. Gambler,* 662 F.2d 834 (D.C.Cir. 1981). Illustrative of the latter interpretation of the term "collateral" are *United States v. Brutzman,* 731 F.2d 1449, 1452 (9th Cir.1984) (upholding trial court limitation on cross-examination to show witness bias by evidence of civil law suit between witness and defendant and deeming issue "collateral"), and *Robinson v. State,* 593 P.2d 621, 624 (Alaska 1979) (upholding trial court limitation of cross-examination to show bias resulting from pending charges against a prosecution witness out of state and deeming matter "collateral").

Evidence regarding Lister's murder would certainly be collateral in the second sense since Eacker did not testify about it on direct examination and it is certainly possible for Eacker to have both killed Lister and participated in a robbery with Jackson. Since Jackson sought to use the evidence to show "bias," it is arguable that the evidence is not collateral in the first sense of the term since it would be independent-

ly provable at trial. *Babcock,* 685 P.2d at 727 n. 1.

Focusing on whether the evidence was "collateral" or "direct" obscures rather than advances analysis, in my view, however, since the fact that impeachment goes to a collateral fact should be merely one circumstance that the trial court should consider in exercising its discretion under Evidence Rule 403. This is, in effect, what all the courts considering the matter have done. Where a witness would appear to the jury as totally disinterested in the outcome but for a specific inquiry into a matter suggesting "bias" or "interest," the inquiry is not collateral and if precluded by a proper invocation of the witness' fifth amendment rights, then the witness' testimony must be stricken. Where, however, there is other evidence in the record from which the jury could infer bias or interest and, *a fortiori,* where the jury is instructed that the witness is an accomplice and therefore biased, as a matter of law then the inquiry is "collateral" and invocation of the privilege does not require striking the testimony. The trial court should evaluate it in light of Evidence Rules 403 and 611(a). In reaching an appropriate balance the trial court should consider the evidence already in the record suggesting the witness' bias or interest and the extent to which the prosecution has successfully deprived that evidence of its probative force. Ultimately the question must be: Is there a substantial risk that the jury will uncritically accept false accusations by the witness against the defendant if additional evidence of bias is not put before the jury. In this case the trial court applied the proper procedures and, in the exercise of its discretion, accepted Eacker's invocation of the fifth amendment and did not, *sua sponte,* strike Eacker's testimony.

Given the record, the trial court's conclusions were not an abuse of discretion and we should affirm the judgment. If the trial court's ruling was error, it was harmless beyond reasonable doubt for the reasons set out in *Braham v. State,* 571 P.2d 631, 645–48 (Alaska 1977).