[No. 45135.    En Banc.    October 26, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK LAWRENCE WALECZEK, *Petitioner*.

*Dennis R. Scott* (of *Brigham & Brigham*), for petitioner.

*James P. McNally, Prosecuting Attorney,* and *James B. Roche, Deputy,* for respondent.

HAMILTON, J.—Defendant (petitioner) is charged with the crimes of indecent liberties and communicating with a minor for immoral purposes. He appeals from a preliminary order of the trial court allowing the State to call defendant's wife as a witness. The only issue to be decided is whether defendant is a guardian as that term is used in RCW 5.60.060(1) (the husband–wife privileges).

On January 5, 1977, Theraesa Rines and her mother, JoAnn DePew, were visiting with Jessie Val Bennett and defendant. At that time defendant and Ms. Bennett were not married. JoAnn DePew had known the couple socially for about 3 weeks.

During this visit, Theraesa, age seven, became interested in certain "ink pens and transfers" possessed by Ms. Bennett. The child asked Ms. Bennett if she could stay overnight with her. Ms. Bennett asked Theraesa's mother for permission, and the mother agreed with the proviso that the child be sent to school the following morning.

According to Theraesa's mother, the defendant, who was present during the conversation, did not object to the arrangement. In addition, Theraesa's mother stated that she asked the defendant and Ms. Bennett if they had anything to feed Theraesa for breakfast. The defendant replied that they had oatmeal and that he would get Theraesa up in the morning and off to school.

Later that evening the alleged sexual misconduct occurred.

On May 2, 1977, Ms. Bennett voluntarily gave a statement to the sheriff's department admitting that she was involved in sexual misconduct with Theraesa, and she also incriminated defendant. On May 6, 1977, defendant and Ms. Bennett were married.

Defendant moved to suppress his wife's statements to the sheriff (which she made before marriage) and to have her prevented from being called as a witness by the State. Defendant relies upon the husband–wife privileges contained in RCW 5.60.060(1).

The trial court denied defendant's motion ruling that a guardianship relationship was established during the child's one night stay in defendant's home.

We affirm this holding of the trial court.

Defendant argues that the "guardian" exception to the privileges contained in RCW 5.60.060(1) does not apply to him because the legislature was primarily concerned with an established parental or familial relationship and child abuse committed in the victim–child's own home. He argues further that in order for a person to be considered a child's guardian there must be some judicial appointment or some natural or "legal" relationship to the child, and

generally there must be a passage of a period of time longer than that involved herein.

█ The basic goal of all statutory construction is to carry out the intent of the legislature. *Dominick v. Christensen*, 87 Wn.2d 25, 584 P.2d 541 (1976). In order to accomplish this goal we must examine the privileges contained in RCW 5.60.060(1) and the origins of the "guardian" exception contained therein.

RCW 5.60.060(1) provides:

(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, *nor to a criminal action or proceeding for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian.*

(Italics ours.)

█ The husband–wife privileges are not highly favored by legal commentators. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* §§ 66 and 86 (2d ed. 1972); 8 J. Wigmore, *Evidence in Trials at Common Law* §§ 2228 and 2332 (McNaughton rev. 1961). In *State v. Thompson*, 88 Wn.2d 518, 564 P.2d 315 (1977), we recognized that these privileges often promote the suppression of truth, and that in some situations principles of public policy make it more important that the witness'–spouse's testimony be available. We think the present case is one of those situations.

The italicized portion of RCW 5.60.060(1) quoted previously was added by Laws of 1965, ch. 13, § 7, p. 972. This act also contains the basis for our present child abuse reporting statute, RCW 26.44. Laws of 1965, ch. 13, § 1, p. 970, now codified as part of RCW 26.44.010, stated the purpose of the act:

SECTION 1. *In order to protect children whose health and welfare may be adversely affected through the infliction, by other than accidental means, of physical injury and/or physical neglect, or sexual abuse,* requiring the attention of a practitioner of the healing arts, the Washington state legislature hereby provides for the reporting of such cases by such practitioners to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to *prevent further abuses, and to safeguard and enhance the general welfare of such children.*

(Italics ours.)

RCW 26.44.010 has since been amended to make even a stronger statement of purpose. It now declares, in part:

The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; *however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred,* and in the instance where a child or mentally retarded person is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children:

(Italics ours.)

Both RCW 26.44.010 and its predecessor, Laws of 1965, ch. 13, § 1, make it abundantly clear that the legislature, as well as the public generally, is greatly concerned with incidents of physical and sexual child abuse. Further, these declarations imply that the legislature is not concerned with child abuse only in certain situations, but that it is concerned with all incidents of child abuse.

This court has recognized the legislature's strong policy on two prior occasions. The most recent case is *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86 (1975). There defendant argued that certain testimony against him, which tended to show he assaulted the 3-year-old son of a woman with whom defendant was living, violated RCW 18.83.110 (the patient–psychologist privilege) and RCW 69.54.070 (statements made by persons submitting themselves for drug or alcohol treatment should remain confidential). We disagreed, however, stating that these statutes should be construed in light of RCW 26.44. We said:

> Thus, we cannot accept the appellant's theory that confidential communications between the perpetrator and a psychologist, or a doctor, or a mental health center employee, are protected from disclosure and privileged in a judicial proceeding, according to the terms of the applicable statutes. Such protection might well be deemed to be in the public interest. But it is evident that, in its recent enactments, the legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than to counseling and treatment of persons whose mental or emotional problems cause them to inflict such abuse.
>
> . . . The legislature has expressed an intent to protect the confidentiality of communications made in the physician–patient and psychologist–patient relationship, except where they relate to child abuse; and in this area the interest in discovery of cases of such abuse and in protecting the child from future recurrences is found to be overriding. Prosecution of the offender is contemplated as properly incidental to at least the latter purpose. The interest in encouraging the child abuser to seek treatment is subordinated to this aim.

*State v. Fagalde, supra* at 736–37. Similarly, we feel that the husband–wife privileges contained in RCW 5.60.060(1) are also subordinated to the overriding and paramount legislative intent to protect children from physical and sexual abuse.

In the earlier case of *State v. Lounsbery*, 74 Wn.2d 659, 445 P.2d 1017 (1968), we held that the word "parent" as used in RCW 5.60.060(1) includes a stepparent. Again we

emphasized the intent of the legislature to protect children from child abusers.

An examination of the stated purpose of the act which amended RCW 5.60.060(1) to make it possible for a parent to testify against his spouse in cases of child abuse (to be found in RCW 26.44.010) shows that the legislature's purpose was to facilitate the disclosure of abuses of children, so that the offenders might be punished and the children protected from further mistreatment. It would be a frustration of this purpose to hold that the word "parent," as it is used in the section in question, means only a natural or an adoptive parent. According to Merriam–Webster Third International Dictionary (1964), a parent is anyone standing in loco parentis, that is, in the relationship of parent, and includes a stepparent.

While the word parent may not be used with this broad meaning in every legislative act in which it appears, we think it clear that it was intended to have a broad meaning in this context.

*State v. Lounsbery, supra* at 663.

The word "guardian" standing alone does not suggest the necessity of some formal or blood relationship as defendant contends. "[It] has various meanings; it may be used to designate one or more of the various classes of guardians . . . or it may be used in its broader and general sense." (Footnotes omitted.) 39 C.J.S. *Guardian and Ward* § 2 (1976). The same policy reasons which persuaded us to broadly construe the word "parent" in RCW 5.60.060(1) in *State v. Lounsbery, supra,* are just as applicable here.

Generally speaking then, a guardian, like a parent, ordinarily connotes a person in loco parentis. 39 Am. Jur. 2d *Guardian and Ward* § 65 (1968); 39 C.J.S. *Guardian and Ward* § 3 (1976). In *State ex rel. Gilroy v. Superior Court,* 37 Wn.2d 926, 933, 226 P.2d 882 (1951), this court had an occasion to consider the concept of in loco parentis. We observed there, quoting from 67 C.J.S. *Parent and Child* § 71 (1950), that the accepted definition of a person in loco parentis is

one who means to put himself in the situation of a lawful parent to the child with respect to the office and duty of

making provision for it; one assuming the parental character and discharging parental duties; a person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption.

(Footnotes omitted).

Our analysis of the present case and *State v. Lounsbery, supra,* leads us to conclude that ordinarily the determination of whether a person is a parent or guardian, as those terms are used in RCW 5.60.060(1), will depend on the particular facts and circumstances of the case. Here, we think the trial court had sufficient evidence, albeit by affidavit, from which it could conclude that defendant became, even for the short time involved, a custodial guardian because he stood in loco parentis to Theraesa.

Defendant and his wife voluntarily undertook duties that are normally characterized as parental: They agreed to let Theraesa sleep at their house, wake her up in the morning, provide her with breakfast, and make sure she went to school. In addition, we have no doubt that Theraesa, being only 7 years old, would trust, respect, and obey defendant and his wife principally because she had been left in their care by her own mother. Therefore, we affirm the trial court.

WRIGHT, C.J., and ROSELLINI, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD and BRACHTENBACH, JJ., concur in the result.