Deborah DANIELS, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–366.

Court of Appeals of Alaska.

April 17, 1984.

M. Ashley Dickerson, Anchorage, for petitioner.

David Mannheimer, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Mr. and Mrs. Daniels have been licensed foster parents in Alaska for approximately a year. S.B. is a thirteen-year-old girl who apparently was in state custody pursuant to a court order following a child-in-need-of-aid report. She was placed in the Daniels' home on January 6, 1984. S.B. was removed from the Daniels' home in late March, apparently based upon a report alleging that Mr. Daniels had sexually abused her.

On March 30, 1984, a grand jury was convened in Palmer, Alaska, concerning the allegation that Mr. Daniels sexually abused S.B. while she was under the Daniels' foster care. Mrs. Deborah Daniels, the defendant's wife, was subpoened to testify before the grand jury. Mrs. Daniels refused to testify, claiming a privilege under Evidence Rule 505. That rule reads, in pertinent part, as follows:

*Husband-Wife Privileges.*

(a) *Spousal Immunity.*

(1) *General Rule.* A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent.

(2) *Exceptions.* There is no privilege under this subdivision:

. . . .

(D) In a proceeding in which one spouse is charged with:

(i) A crime against the person or the property of the other spouse or of a child of either, whether such crime was committed before or during marriage.

. . . .

(b) *Confidential Marital Communications.*

(1) *General Rule.* Neither during the marriage nor afterwards shall either

spouse be examined as to any confidential communications made by one spouse to the other during the marriage, without the consent of the other spouse.

(2) *Exceptions.* There is no privilege under this subdivision:

(A) If any of the exceptions under subdivision (a)(2) of this rule apply. . . .

Judge Beverly Cutler ruled that Mrs. Daniels could not refuse to testify based on the husband-wife privilege because Daniels' grand jury testimony would involve "a proceeding in which one spouse is charged with. . . [a] crime against . . . a child of either" and would therefore fall within Evidence Rule 505(a)(2)(D)(i), an exception to the husband-wife privilege.[1] Judge Cutler found Mrs. Daniels in contempt of court based upon her refusal to testify before the grand jury. Judge Cutler ordered Daniels committed to jail for a period not to exceed six months, or until the grand jury term is concluded. Judge Cutler also ordered Daniels to be returned to court in thirty days, and periodically thereafter, to see if she agrees to testify. Judge Cutler stated that Daniels could voluntarily contact the court before the end of the thirty-day period concerning her willingness to testify. Judge Cutler informed Daniels that this was a civil contempt order and that Daniels could purge herself of contempt at any time by agreeing to testify.

Mrs. Daniels filed a motion for emergency relief with this court. We have decided to treat this issue as a petition for review. *E.L.L. v. State,* 572 P.2d 786, 787 (Alaska 1977). We grant the petition for review and affirm the order of the superior court.[2]

Mrs. Daniels argues that the husband-wife privilege set forth in Evidence Rule 505 allows her to refuse to testify against her husband. She argues that Judge Cutler erred in finding that the grand jury

---

1. Judge Cutler also based her ruling on AS 47.-17.060 which provides:

   *Evidence Not Privileged.* Neither the physician-patient nor the husband-wife privilege is a ground for excluding evidence regarding a child's harm, or its cause, in a judicial proceeding related to a report under this chapter.

Since we have decided this case based upon an interpretation of the husband-wife privilege, it is unnecessary for us to comment on this ruling by Judge Cutler.

2. We granted a stay of Judge Cutler's contempt order until we could decide this case.

proceeding involved "a proceeding in which one spouse is charged with... [a] crime against ... a child of either" and that, therefore, her testimony was not covered by the husband-wife privilege.

Neither Evidence Rule 505 nor the commentary to that rule clarifies exactly what children are included in the language "a child of either." Mrs. Daniels argues that the phrase should apply to natural or adopted children but not to foster children. The state argues that when a child is in state custody and has been placed in a licensed foster home, a legal relationship between the foster parents and the foster child exists by statute. The foster parents have "the responsibility of physical care and control of the child, the determination of where and with whom the child shall live, the right and duty to protect, train and discipline the child, and the duty of providing the child with food, shelter, education, and medical care." AS 47.10.084. The state argues that this legal relationship should be sufficient to establish that S.B. was the Daniels' child for purposes of applying the exception to the husband-wife privilege.

There is authority for the position taken by Mrs. Daniels. In *People v. Clarke*, 366 Mich. 209, 114 N.W.2d 338 (1962), the court upheld a claim of husband-wife privilege in a case similar in many respects to the case at bar. In that case, Clarke was charged with taking indecent liberties with a minor child. The child in question was an eleven-year-old girl who had lived with the Clarkes since birth. *Id.* at 339. Although the girl was not the natural child of either Mr. or Mrs. Clarke, and had never been formally adopted, they had raised the girl as their daughter. A Michigan statute provided that a wife could not testify against her husband without his consent. Michigan case law had also construed this statute to mean that a wife could not sign a complaint against her husband without his consent. This husband-wife privilege did not apply "in cases of prosecution for a crime committed against the children of either or

both [husband and wife]." *Id.* at 339–40. Clarke was convicted on the basis of a complaint signed by his wife and based in part on her testimony against him at trial. The court set aside Clarke's conviction and dismissed the complaint. The court held that the wife could not testify without the consent of the husband. The court ruled, without discussion, that the girl was not a child of either Mr. Clarke or Mrs. Clarke or both of them. *Id.* at 340–41. This case is authority for the position taken by Daniels. However, it is not recent authority, and it appears to stand alone.

There is, however, more recent authority for construing the husband-wife privilege narrowly. These cases, and the policy arguments supporting them, lead us to the conclusion that we should construe this privilege narrowly. The Alaska cases which the parties have cited do not involve factual situations similar to the case at bar. However, they do support the general policy of construing the husband-wife privilege narrowly.

In *Loesche v. State*, 620 P.2d 646, 649–50 (Alaska 1980), the supreme court upheld a trial court ruling which allowed a wife to testify against her husband in spite of the husband-wife privilege. Although the rule establishing the privilege applied to the case, the trial court had relaxed the rule under Criminal Rule 53, which allows relaxation of rules "where it shall be manifest to the court that a strict adherence to them will work injustice." The supreme court held that it was not error for the trial court not to enforce the husband-wife privilege since the wife was willing to testify against the husband and it was clear that the marriage was already destroyed.

Similarly, the Alaska Supreme Court upheld a trial court's decision not to apply the husband-wife privilege where a defendant married an important prosecution witness on the eve of trial. *Osborne v. State*, 623 P.2d 784 (Alaska 1981).[3] In deciding *Osborne*, the court stated:

---

**3.** *Loesche* and *Osborne* were decisions under     former Criminal Rule 26(b)(2)(i) which is sub-

Compulsory testimony is the basic norm of our legal system. Correspondingly, testimonial privileges, other than those resting upon a constitutional basis, should be given a fairly narrow scope. We hold that the trial court correctly denied to Osborne the protection afforded by the privilege against adverse spousal testimony, and correctly applied Criminal Rule 53. *See Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

*Id.* 623 P.2d at 787–88 (citation and footnote omitted).

In *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980), the United States Supreme Court stated:

Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public... has a right to every man's evidence.' " As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." [Citations omitted.]

*Loesche, Osborne,* and *Trammel* therefore offer support for construing the husband-wife privilege narrowly. However, these cases are distinguishable from the case at bar since they either involve a spouse who was willing to testify against the other spouse[4] or, in the case of *Osborne,* a marriage which the court concluded was essentially a sham to prevent the wife's testimony.

In cases more similar to the case in issue, the courts of the State of Washington have acted to greatly narrow the husband-wife privilege. For instance, in *State v. Walec-*

zek, 90 Wash.2d 746, 585 P.2d 797 (1978), the defendant was charged with the crimes of indecent liberties and communicating with a minor for immoral purposes. A Washington statute provided for a husband-wife privilege but also provided that the privilege would not apply in a "criminal action or proceeding for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian." *Id.* at 798. Waleczek was charged with molesting a young girl whose mother had given the girl permission to stay overnight with Waleczek and a Ms. Bennett, whom Waleczek later married. *Id.* The Washington court construed the husband-wife privilege narrowly and concluded that a guardian relationship had been established for the night between the girl, Waleczek and Ms. Bennett. Therefore, the husband-wife privilege did not apply to bar the wife's testimony. *Id.* at 800–01. *See also State v. Lounsbery,* 74 Wash.2d 659, 445 P.2d 1017, 1020–21 (1968) (husband-wife privilege not a bar to testimony of defendant's wife in prosecution for carnal knowledge and indecent liberties with stepdaughter; the words "parent or guardian" in the Washington statute abrogating marital privilege include a step-parent); *State v. Bouchard,* 31 Wash.App. 381, 639 P.2d 761, 764–65 (Wash.App.1982) (husband-wife privilege not a bar to testimony of defendant's wife in prosecution for taking indecent liberties with granddaughter; the word "guardian" in the Washington statute abrogating husband-wife privilege includes grandparent who assumed parental duties).

In *State v. Brydon,* 626 S.W.2d 443 (Mo. App.1981), the court held that the husband-wife privilege did not apply to an offense involving sexual assault on a foster child. Brydon did not involve the court compelling Brydon's wife to testify against him. The

---

stantially the same as A.R.E. 505(a)(1). *See Loesche v. State,* 620 P.2d 646, 649 n. 2 (Alaska 1980); *Osborne v. State,* 623 P.2d 784, 787 at 787 (Alaska 1981). However, the *Osborne* problem would not arise under Evidence Rule 505. 623 P.2d at 787 n. 5.

**4.** *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186, 196 (1980), involved a wife who was willing to testify about her husband's criminal activities in return for an offer of immunity and assurance of more lenient treatment in her own case by the government.

wife made statements in Brydon's presence to a social worker and counselor indicating that Brydon had sexual contacts with N., their foster child, who had been in their custody for three years. The trial court had admitted, as evidence of "tacit admission," the fact that these statements had been made in Brydon's presence and Brydon had not responded to the statements by denying that he had sexual contact with N. Brydon objected on appeal that the wife's statements had been used against him in violation of the husband-wife privilege. The court held that Brydon's wife's "testimony" fell within an exception to the husband-wife privilege:

> Even at common law, however, the incompetency did not appertain to prevent the testimony of the wife against the husband for injury done or threatened to her person. That exception rests on the necessity to protect the wife—otherwise without remedy—and considerations of public justice. That exception to the common law rule of spousal testimonial disability was unaffected by the statute and survives. The courts continue to receive the testimony of a wife to prosecute a husband not only for injury to the spouse but also for injury to a child or step-child on the rationale that a crime against the child of the family is equivalent to a crime against the spouse. A child committed to the protection of foster parents logically comes within that ambit. The declarations of wife Lovedy in the presence of the husband defendant and reported in evidence by Munson and Keen were lawful evidence.

*Id.* at 452–53 (citations and footnote omitted).

■ All the cases which we have considered appear to us to be readily distinguishable for one reason or another. However, we believe that most of the cases do indicate a general policy to construe the marital privilege narrowly, particularly in cases involving child abuse. *See generally,* Annot. 93 ALR 3rd 1018 (1978, Supp. 1983) (concerning competency of one spouse to testify against other in prosecution for offense against child of both or either); E. Cleary, *McCormick on Evidence,* § 66, at 145–46 (2d ed. 1972) (finding the husband-wife privilege to be generally archaic and outmoded). We believe that the language of Evidence Rule 505(a)(2)(D)(i), which abolishes the husband-wife privilege where "one spouse is charged with... [a] crime against... a child of either" is sufficiently broad to apply to a crime committed against a foster child.

■ The general policy behind the husband-wife privilege is to promote family peace and harmony by not having one spouse testify against another. *See Loesche v. State,* 620 P.2d at 649. However, under the common law and under Evidence Rule 505, the husband-wife privilege clearly must yield to the policy of preventing child abuse. The only question is whether there is a good reason to limit the policy of compelling one spouse to testify against another in a child abuse case to situations involving harm to natural or adopted children. We believe that a foster child such as S.B., who is placed by the state and accepted by the foster parents in a foster home, should be entitled to the same protection as a natural or adopted child. Therefore, the policy of the husband-wife privilege of protecting the family relationship must yield to the public policy of preventing child abuse. We accordingly hold that S.B. is a child of Mr. and Mrs. Daniels for purposes of applying the exception to the husband-wife privilege set forth in Evidence Rule 505(a)(2)(D)(i). It follows that Mrs. Daniels could not rely on the husband-wife privilege to refuse to testify against her husband concerning any evidence relating to an assault on S.B. Judge Cutler could therefore properly find Mrs. Daniels in contempt of court for refusing to testify before the grand jury.

The judgment is AFFIRMED.