[No. 18735-0-I. Division One. December 21, 1987.]

The State of Washington, *Respondent*, v. Kenneth McKinney, *Appellant*.

*Terrence Kellogg,* for appellant.

*Norm Maleng, Prosecuting Attorney, Deborah J. Phillips, Senior Appellate Attorney,* and *Cindy K. Smith, Deputy,* for respondent.

PEKELIS, J.—Kenneth McKinney appeals his conviction for indecent liberties. He contends that the trial court erred in: (1) admitting the victim's hearsay statements under RCW 9A.44.120; (2) admitting the testimony of McKinney's wife under the guardian exception to the marital privilege; (3) admitting the testimony of McKinney's wife regarding McKinney's prior conduct with the victim and other children; and (4) admitting the testimony of a sexual deviancy specialist concerning McKinney's statements made in an interview with her.

## FACTS

McKinney was charged by information with the crime of taking indecent liberties with his 4–year–old niece, A.S. The information was later amended to include the charge of first degree statutory rape.

Before trial, the court held a hearing to determine whether the victim, A.S., who was 4½ at the time, was competent to testify. The trial court found that she was competent. In addition, the trial court held a hearing pursuant to RCW 9A.44.120 (the child hearsay statute) to determine the admissibility of several hearsay statements A.S. made to her mother, D.S. Defense counsel argued that A.S.'s hearsay statements to D.S. were not reliable primarily because D.S. proposed to testify at trial about two additional statements made to her by A.S. which D.S. had not previously remembered. The court disagreed and found that there were sufficient indicia of reliability to permit admission of the victim's statements.

McKinney also made a motion *in limine* to exclude testimony of Cindy McKinney, his estranged wife, and of Susan Moores, the sexual deviancy specialist who had interviewed him. The trial court denied McKinney's motion, ruling that Cindy McKinney's testimony was admissible under the guardian exception to the marital privilege. *See* RCW 5.60-.060(1). The court also ruled that Susan Moores' testimony would be admissible. At trial, the following testimony was presented:

On August 17, 1985, D.S. and her husband left their children, A.S. and her brother, N.S., overnight in the care of the children's grandparents. At the time, A.S. was 4 years old and N.S. was 3. The grandmother slept in the children's bed because this was the first time they had spent the night alone at their grandparents' house.

Sometime after midnight, A.S.'s aunt, Cindy McKinney, and Cindy's husband, the defendant McKinney, arrived at the grandparents' house. At the grandmother's request, Cindy slept in the living room with the children and McKinney slept in the spare bedroom. Around 5 o'clock that morning, McKinney woke up Cindy and asked her to drive him to work. Cindy agreed. She followed McKinney to the spare bedroom and then went to the bathroom. When she returned to the living room, she found McKinney sitting on the children's bed talking to A.S. A.S. asked her whether "Uncle Kenney" had slept with her. Cindy assured her he had not. She lay down between the children and McKinney lay down next to A.S. Cindy dozed off and then woke up to the sound of McKinney showering. She got up, dressed, and took McKinney to work. When she returned, A.S. again asked her whether Uncle Kenney had slept with her.

Later that morning, A.S.'s parents picked up A.S. and N.S. from their grandparents and took them to a picnic in the park. On the way, A.S. lay down on the backseat of the car and intermittently held her lower abdomen and "curled up in a little ball". In response to her mother's question, A.S. denied that she had a stomachache. While the family was eating lunch at the park, A.S. told her mother that "her pee pee [vagina] hurt." D.S. took A.S. to the bathroom and asked A.S. "offhandedly, if anybody had touched her in her private parts". A.S. answered "yes, Uncle Kenney did . . . [a]nd . . . [he] told me not to tell but I did, didn't I, Mommy." In the bathroom, D.S. asked A.S. to show her

"what Uncle Kenney did." A.S. gestured with her forefinger back and forth toward her vagina.[1]

D.S. took A.S. to be examined by Dr. Frederick Hazeltine. He testified that he was unable to find any trauma to A.S.'s genitalia, but admitted that lack of physical trauma did not rule out sexual abuse or digital penetration.

After A.S.'s report of sexual abuse, McKinney visited Susan Moores, a sexual deviancy specialist, to "prove that he was innocent." McKinney went to Susan Moores twice for evaluation. Susan Moores testified that during the first session, McKinney told her that he had gone to A.S.'s bed while he was getting ready for work, tickled her on her stomach and under her arms, and then lain down beside her and may have dozed off for a few minutes. McKinney suggested he might have molested A.S. while he was dozing, but did not remember. Susan Moores told McKinney that he was "minimizing faults that most people admit to" and was being "dishonest in testing". In response, McKinney admitted he may have molested A.S., but could not recall, and then denied that he had touched her at all.

At the second session, at which Cindy was present, McKinney denied he had touched A.S.[2] but admitted "he had experienced sexual feelings about his niece and he had experienced a desire to touch her on the vagina." McKinney told Susan Moores that ". . . maybe I tried to hold myself away from touching her in areas."

---

[1]On cross examination, D.S. admitted that she had not previously remembered A.S.'s statement that McKinney had told A.S. not to tell. She also admitted that originally she had described A.S.'s gesture more ambiguously as pointing her finger "out in the air" and that she had told the detective over the telephone that A.S. had gestured by "put[ting] her finger on her pee pee."

[2]Cindy testified that she remembered that McKinney alternated between admitting he had touched A.S. in her private parts, denying he had touched her, and claiming that if he had touched her, he had blacked out and could not remember. Cindy also testified that McKinney said he had thought about touching A.S. in her vaginal area while he played with her, did not know if he could control himself, and sometimes would push her away.

After A.S. and D.S. had testified, defense counsel again moved to exclude D.S.'s testimony on the ground that A.S.'s hearsay statements were not reliable. The trial court denied the motion. After deliberating, the jury acquitted McKinney on the statutory rape charge, but convicted him of indecent liberties.

ANALYSIS

· I

CHILD HEARSAY STATEMENTS

A. Adequate Indicia of Reliability

■ RCW 9A.44.120[3] permits the use of an otherwise inadmissible statement by a victim of sexual abuse under the age of 10 when the court finds that the circumstances of the statement provide sufficient indicia of reliability. *State v. Henderson,* 48 Wn. App. 543, 549, 740 P.2d 329 (1987); *State v. Hancock,* 46 Wn. App. 672, 675–76, 731 P.2d 1133, *review granted,* 108 Wn.2d 1021 (1987). The trial court's finding that a hearsay statement is admissible under RCW 9A.44.120 should not be reversed absent a showing of manifest abuse of discretion. *State v. Frey,* 43 Wn. App. 605, 611, 718 P.2d 846 (1986); *State v. Slider,* 38 Wn. App. 689, 698, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985). In exercising this discretion, *Ryan* requires that the trial court consider nine factors bearing on the reliability of a hearsay statement. *State v. Ryan,* 103 Wn.2d 165, 175–76, 691 P.2d 197 (1984). These factors must be "substantially

---

[3]RCW 9A.44.120 provides that:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

met before a statement is demonstrated to be reliable." *State v. Griffith*, 45 Wn. App. 728, 739, 727 P.2d 247 (1986).

■ McKinney argues that the circumstances surrounding A.S.'s statements to her mother did not provide sufficient indicia of reliability primarily because D.S. testified to two hearsay statements made to her by A.S. which D.S. had not previously remembered. However, McKinney cites no authority that would support his contention that the *witness's* faulty recollection of a child's statement necessarily renders the *child's* statement unreliable.

The constitutional requirement that there be adequate indicia of reliability surrounding a child's hearsay statements refers to the circumstances that "existed *at the time the statement was made* . . ." (Italics ours.) *Ryan*, 103 Wn.2d at 174 (quoting *Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir. 1979)). *Ryan* does not require the trial court to determine if the *witness's* memory or articulation of the child's statement is reliable. Indeed, any deficiencies in the witness's memory or perception may be explored on cross examination. Here, defense counsel had ample opportunity to show the jury how D.S.'s recollection of A.S.'s statements changed shortly before trial. We reject McKinney's attempt to alter the focus of the *Ryan* analysis from the reliability of the victim's statement to the reliability of the witness's recollection.

In the alternative, McKinney contends that the circumstances surrounding A.S.'s statement did not provide sufficient indicia of reliability because (1) only one person heard A.S.'s statements; (2) the statements were not made spontaneously; (3) the statements were not a "recitation of acts generally unknown to children"; and (4) the timing of the statement and the relationship between A.S. and the witness "favored inadmissibility of the statements."

The record supports the trial court's finding. There was no evidence that A.S. had any motive to lie, that D.S. was predisposed to believe McKinney had abused her daughter, or that the close relationship between the victim and the

witness interfered with D.S.'s objectivity. A.S.'s statements were clearly spontaneous.[4] In addition, A.S. told her mother of the abuse only a few hours later while she still felt physical pain, making the possibility of her faulty recollection remote. Furthermore, A.S. described acts not generally known by children, and there was no evidence suggesting that A.S. had misrepresented McKinney's involvement. The trial court therefore did not abuse its discretion in finding that A.S.'s statements were reliable.

B. Unavailability and Corroboration

McKinney contends that the trial court should have required evidence corroborating the abuse because A.S. was "unavailable" within the meaning of RCW 9A.44.120. Although McKinney does not challenge the trial court's determination that A.S. was competent to testify, he does contend that A.S.'s trial testimony so sharply contrasted with her testimony at the competency hearing that she became "unavailable" within the meaning of RCW 9A.44-.120. McKinney asserts that his Sixth Amendment rights were thereby violated and that corroborative evidence of the abuse was required.

An "available" witness is one who can be confronted and cross–examined. *State v. John Doe,* 105 Wn.2d 889, 895, 719 P.2d 554 (1986). Although the reliability of a child's hearsay statements does not depend on whether that child is competent at the time of trial, an incompetent child is not available within the meaning of RCW 9A.44.120 and hence evidence corroborating the abuse is required in order to admit the hearsay statements. *John Doe,* 105 Wn.2d at 896–97.

 While there were some inconsistencies in A.S.'s testimony at trial, her testimony at both the competency

---

[4]Statements made in response to questions are spontaneous where the child volunteers the information in response to questions that are neither leading nor suggestive. *State v. Henderson,* 48 Wn. App. 543, 550–51, 740 P.2d 329 (1987). D.S.'s questions were not leading and in no way suggested an answer. Thus, A.S.'s statements in response were "spontaneous" under *Ryan.*

hearing and at trial was consistent on the critical issue of whether Uncle Kenney touched or tickled her private parts. Even though she failed to remember some details she had remembered at her competency hearing, she was able to answer specific questions on cross examination regarding various details about the incident. Any inconsistencies in A.S.'s testimony went to her credibility rather than her competency as a witness.[5] A.S. was thus "available" within the meaning of RCW 9A.44.120[6] and no evidence corroborating the alleged abuse was required.

## II
### GUARDIAN EXCEPTION

McKinney contends that the trial court erroneously determined that Cindy McKinney could testify against her husband under the guardian exception to the marital privilege. RCW 5.60.060(1) prohibits a husband or wife from testifying against the other regarding any communications made by one to the other during their marriage unless the nontestifying spouse consents. However, the statutory privilege does not apply in a criminal action or proceeding for a crime committed by a spouse against any child "of whom

---

[5]Indeed, the trial court enabled defense counsel to capitalize on these inconsistencies by allowing the defense to admit in evidence and read to the jury the transcript of A.S.'s competency hearing.

[6]McKinney attempts to analogize this case to *State v. Griffith*, 45 Wn. App. 728, 727 P.2d 247 (1986) and *State v. Gitchel*, 41 Wn. App. 820, 706 P.2d 1091, *review denied*, 105 Wn.2d 1003 (1985). Those cases are clearly distinguishable from this case, however. In *Griffith*, the court held that the trial court erred in finding the child incompetent to testify because its ruling deprived the defendant of his Sixth Amendment right to cross-examine the witness and deprived the jury of its opportunity to judge the witness's credibility. *Griffith*, 45 Wn. App. at 736–37. Here, the trial court determined A.S. was competent to testify, she did testify, her testimony was subject to cross examination, and the inconsistencies between her trial testimony and her competency hearing testimony were presented to the jury. Thus, McKinney's confrontation rights were not offended.

The facts of *Gitchel* are also distinguishable from this case. There, the trial court found the child was incompetent to testify because at the pretrial hearing "really nothing of substance could be obtained from her in the way of testimony.'" *Gitchel*, 41 Wn. App. at 824 (quoting the trial record). In contrast, A.S. was able to testify, albeit inconsistently, about the alleged abuse.

said husband or wife is the parent or guardian . . ." RCW 5.60.060(1). This exception reflects the Legislature's decision to subordinate the marital privilege to the "overriding and paramount legislative intent to protect children from physical and sexual abuse." *State v. Waleczek,* 90 Wn.2d 746, 751, 585 P.2d 797 (1978); *accord, State v. Bouchard,* 31 Wn. App. 381, 387, 639 P.2d 761, *review denied,* 97 Wn.2d 1021 (1982).

▆ A "parent" or "guardian" is anyone who "stand[s] in the relationship of parent" or who "assume[s] duties normally characterized as parental even for a short time." *Bouchard,* 31 Wn. App. at 387; *accord, Waleczek,* 90 Wn.2d at 752–53. Whether someone is a "guardian" within the meaning of RCW 5.60.060(1) depends on the facts and circumstances of the case. *Waleczek,* 90 Wn.2d at 753.

Here, the trial court's determination that Cindy was A.S.'s guardian is supported by the evidence. A.S. had been left in her grandmother's care. When Cindy arrived home, the grandmother requested that Cindy take over and sleep with the children to make sure they did not become frightened.[7] Thus, while Cindy slept with the children she was responsible for responding to their needs. The trial court's finding that Cindy was acting as "guardian" of A.S. is consistent with the Legislature's clear policy in favor of protecting children from sexual abuse. Accordingly, we conclude the trial court did not err in finding that Cindy McKinney could testify against her husband under the guardian exception to the marital privilege.

### III
#### EVIDENCE OF PRIOR CONDUCT

▆ McKinney contends that the trial court erred by admitting Cindy's testimony about McKinney's unusual behavior with the victim and other children in violation of ER 403. However, at no time did defense counsel object on

---

[7] Cindy testified that her mother "asked if [she] could stay in between the two kids just in case they woke up or got scared or something . . ."

the basis of ER 403.[8] A party may only assign error on appeal based on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). Thus, McKinney waived his right to raise this issue on appeal. *State v. Manthie*, 39 Wn. App. 815, 825, 696 P.2d 33, *review denied*, 103 Wn.2d 1042 (1985).

## IV
### EVIDENCE ADMITTED UNDER ER 403

McKinney contends that the trial court abused its discretion in finding that the probative value of Susan Moores' testimony outweighed its prejudicial impact under ER 403. At trial, Susan Moores, a sexual deviancy therapist, testified about various statements McKinney made about his sexual feelings toward A.S. during her evaluation of him. While McKinney concedes that these statements are not privileged communications,[9] he nevertheless asserts that the trial court abused its discretion because the prejudicial effect of the evidence outweighed its probative value.

■ ER 403 provides that relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." The trial court recognized the possibility of prejudice, but determined that it was outweighed by the probative value of the statements.[10] The

---

[8]Defense counsel did object to the form of the questions and objected that the questions called for speculation by the witness.

[9]*See State v. Anderson*, 94 Wn.2d 176, 184–85, 616 P.2d 612 (1980) (no privilege between patient and psychologist exists in proceedings involving child abuse) (citing *State v. Fagalde*, 85 Wn.2d 730, 539 P.2d 86 (1975) and RCW 5.60.060(4)).

[10]In addition, the trial court attempted to minimize any potential prejudice to McKinney by excluding any mention of the polygraph tests Susan Moores administered to McKinney. McKinney maintains that this limitation did not neutralize the prejudicial impact of Susan Moores' testimony because the jury was not permitted to know that McKinney denied any recollection of abusing A.S. in response to Susan Moores' statement that he had failed the polygraph tests.

trial judge has wide discretion in balancing the probative value of evidence against its prejudicial impact. *State v. Coe*, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). We conclude that the trial court did not abuse its discretion in admitting Susan Moores' testimony.

Affirmed.

RINGOLD, A.C.J., and GROSSE, J., concur.

Review denied by Supreme Court April 5, 1988.

However, McKinney's argument is without merit since defense counsel did elicit substantially this testimony during the cross examination of Susan Moores.